[No. 2330-1.    Division One.    December 16, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN EDWARD PROCTOR, *Appellant.*

*Greenlee & Greenlee* and *A. Graham Greenlee*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Jack A. Meyerson, Deputy*, for respondent.

WILLIAMS, J.—Norman Edward Proctor was charged with the crime of grand larceny by possession of stolen goods. Proctor moved to suppress certain evidence. The motion was considered at a pretrial hearing, and denied. Trial before the court, sitting with a jury, resulted in a verdict of guilty. Proctor appeals from the order deferring imposition of sentence entered upon the verdict.

The principal issue is raised by the court's denial of the motion to suppress. The facts are that, late in the evening of December 13, 1972, in Seattle, a police officer responded to an alarm which was sounding in a real estate office owned by Proctor. When the officer arrived, he discovered that a basement door was open, and the alarm was still operating. The officer found no one inside, but he did observe a great deal of office equipment and other items, including an outboard motor, two movie projectors, and six radios. Previously, the officer had been told by an informant that Proctor engaged in selling and storing stolen property. He therefore copied the serial numbers of three calculators. A check of the police burglary records disclosed that the calculating machines had been stolen.

Based upon the foregoing information, a search warrant was issued by a district court, and the calculating machines were seized. Later, another warrant was issued and additional property taken. The trial court hearing the motion to suppress believed that the information about Proctor and the existence in the real estate office of a large quantity of office and other equipment was sufficient to justify either a seizure of the property without further investigation or the issuance of a search warrant. The listing of the serial numbers was, therefore, of no consequence.

Proctor contends that the listing of the serial numbers constituted an unlawful "seizure" of property in his office, and that without the information gained from the use of those numbers, there was not probable cause for either seizure of the property or the issuance of a search warrant. He relies upon *United States v. Langley*, 466 F.2d 27 (6th Cir. 1972), and *State v. Murray*, 8 Wn. App. 944, 509 P.2d 1003 (1973), *aff'd*, 84 Wn.2d 527, 527 P.2d 1303 (1974), in support of this proposition. *Langley* is distinguishable. There, the police went to the defendant's house because of a report that it was being burglarized. One of the officers entered the back of a truck parked in the driveway and noted down markings on several large crates which were inside. The police had no information that there was anything unusual about either the truck or the crates. The court held that the officer's entry into the truck and the copying down of the markings was "a step beyond that which was sanctioned by the circumstances."

In *Murray*, the police were given permission to search the defendant's premises for video and office equipment. The search was unsuccessful. On the way out, an officer noted the serial number of an ordinary television set located in the living room of the apartment, although he had no reason to believe that there was anything unusual or suspect about it. The court held that the serial number was taken outside the scope of the consent, and ordered it suppressed as fruit of an unlawful search. *Murray* is an illustration of what the United States Supreme Court meant in *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), when it said:

> Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

In other words, police who are rightfully upon a citizen's property for a limited purpose may not rummage about in

the hope or expectation that incriminating evidence or contraband will turn up. But that is not this case. The information which the police had about Proctor, coupled with the incongruity of the items seen in the business office, gave the officer probable cause to believe that he was looking at stolen property. It was reasonable for him to note the serial numbers. *State v. Palmer,* 5 Wn. App. 405, 487 P.2d 627 (1971). Moreover, in police work, circumstances sometimes develop in which an intermediate response is appropriate. If a police officer has a "well-founded suspicion not amounting to probable cause" that a person has, is, or is about to commit a crime, that person may be detained for investigatory purposes without an arrest. *Adams v. Williams,* 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972); *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). The temporary detention may continue while the officer questions other persons present or radios police headquarters to check the information gained. *State v. Sinclair,* 11 Wn. App. 523, 523 P.2d 1209 (1974); *State v. Kerens,* 9 Wn. App. 449, 513 P.2d 63 (1973). *See also United States v. Van Leeuwen,* 397 U.S. 249, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970); *United States v. Soriano,* 482 F.2d 469 (5th Cir. 1973); *United States v. Garay,* 477 F.2d 1306 (5th Cir. 1973); *United States v. Catanzaro,* 282 F. Supp. 68 (S.D.N.Y. 1968). A noting of the serial numbers on the calculators was such an intermediate response.

Proctor next contends that the trial court erred in instructing upon both circumstantial and direct evidence, because all of the evidence in the case was circumstantial only. This is not true; there was considerable direct evidence bearing upon the issues. *State v. Douglas,* 71 Wn.2d 303, 428 P.2d 535 (1967), relied upon by Proctor, requires that when inconsistent inferences of the defendant's guilt or innocence may reasonably be drawn by circumstantial evidence, the jury must be instructed that

the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be in

consistent with any hypothesis or theory which would establish, or tend to establish, his innocence.

*State v. Gillingham*, 33 Wn.2d 847, 854, 207 P.2d 737 (1949). ■■ Proctor's proposed instruction incorporated this rule. As part of a general instruction on evidence, the court told the jury that

[i]f circumstantial evidence is considered by you, such evidence should be consistent with guilt and inconsistent with innocence.

This is a direct, unadorned statement of the rule. Although it would have been better to use the word "must" rather than "should" so as to conform to the language of *Gillingham*, the point was not called to the attention of the trial court and may not be considered.

Finally, Proctor contends that the judgment should have been arrested because there was no "indicatory evidence on collateral points" required by *State v. Portee*, 25 Wn.2d 246, 170 P.2d 326 (1946).

The rule as stated in *State v. Douglas, supra,* and *State v. Portee, supra,* is that possession of recently stolen property in connection with "slight corroborative evidence of other inculpatory circumstances tending to show guilt," is sufficient to convict. The other corroborative evidence can consist of a failure to explain, a false or improbable explanation, or an explanation that cannot be checked or rebutted.

*State v. Green,* 2 Wn. App. 57, 68, 466 P.2d 193 (1970). There is ample corroborative evidence in the record to fulfill the requirement of *State v. Portee.*

The judgment is affirmed.

CALLOW, J., concurs with WILLIAMS, J.

JAMES, J. (concurring)—I agree that Proctor's conviction should be affirmed. I believe, however, that a further comment is in order concerning the instruction on circumstantial evidence. In rejecting Proctor's requested instruction, the trial judge observed that there was both direct and circumstantial evidence concerning Proctor's guilt and that

the instruction given was appropriate under the ruling of *State v. Nabors*, 8 Wn. App. 199, 505 P.2d 162 (1973). It was.

I should like to point out, however, that recently in *State v. Gosby*, 11 Wn. App. 844, 526 P.2d 70 (1974), we acknowledged that in *Nabors* we were guilty of making an overbroad generalization when we said:

> In a case with both direct and circumstantial evidence, the jury should *not* be instructed concerning a conviction based upon circumstantial evidence *alone*.

*State v. Nabors, supra* at 203. If, as in *State v. Douglas*, 71 Wn.2d 303, 305, 428 P.2d 535 (1967) "[t]he evidence against the defendant is entirely circumstantial," it is error to refuse to instruct that the evidence should be inconsistent with any reasonable hypothesis of innocence. But, as is pointed out in *Gosby*, a similar instruction may also be appropriate in a case with both direct and circumstantial evidence.

> It is conceivable that, in an appropriate case, the jury might be disposed to entirely disregard the *direct* evidence concerning an element of the crime charged. In such event, the jury would then be required to determine whether the State had met its burden of proof by circumstantial evidence. In such a case, a jury should be instructed that the circumstantial evidence in proof of the element *must* be inconsistent with any reasonable hypothesis of innocence.

*State v. Gosby, supra* at 849 n.2.

While I am of the opinion that the substance of Proctor's requested instruction was a correct statement of the law, its refusal did not constitute prejudicial error. The instruction given by the court afforded Proctor full opportunity to argue the principle involved, *i.e.*, that the jurors could not be satisfied that the State had met its burden of proof beyond a reasonable doubt by circumstantial evidence *alone*, if those circumstances were consistent with any reasonable hypothesis of innocence.

As discussed in *State v. Gosby, supra*, instructions on the

subject might better be focused upon the quality of proof of the *elements* of the crime rather than the general issue of guilt or innocence. I suggest that an appropriate instruction might read as follows:

Evidence may be either direct or circumstantial. Direct evidence is that given by a witness who testifies concerning facts to be proven which he has, directly observed or perceived through one or more of the five senses. This is commonly referred to as eyewitness testimony. Circumstantial evidence, sometimes called indirect evidence, consists of proof of facts or circumstances which according to the common experience of mankind give rise to a reasonable inference of the truth of the fact sought to be proved.

One kind of evidence is not necessarily more or less valuable than the other.

If upon a consideration of the whole case you are satisfied beyond a reasonable doubt of the guilt of the defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence, or both.

In order to find that any element of the crime has been proved by circumstantial evidence alone, however, you must be satisfied beyond a reasonable doubt that the facts and circumstances relied upon are not only consistent with each other and with the hypothesis of guilt, but also that they are inconsistent with any reasonable hypothesis of innocence.

CALLOW, J., concurs with JAMES, J.

Petition for rehearing denied March 13, 1975.

Review denied by Supreme Court June 9, 1975.